**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

GRACE COLLINS, et al.,           *

    Plaintiffs,                      *

v.                                              *     Case No.: GJH-18-3503

                                          *

RICHARD RIONDA DEL CASTRO, et al.,

                                          *

    Defendants.

                                          *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Grace Collins alleges breach of contract and fraudulent inducement claims against Defendants.[1] Pending before the Court is Defendants' Motion to Dismiss or Motion to Transfer. ECF No. 9. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the foregoing reasons, Defendants' Motion to Transfer will be granted.

**I.     BACKGROUND[2]**

On December 9, 2016, Plaintiff Grace Collins agreed to loan Defendant Hannibal Production Inc. (Hannibal) $245,000. ECF No. 1-1 at 25. According to the loan agreement, in consideration for Hannibal's receipt of the $245,000 principal loan amount, Hannibal was to pay

---

[1] Plaintiff Collins purports to have filed this action on behalf of herself and her mother, Duk Sun Lyu, for whom she has power of attorney. ECF No. 1-8 at 1. Even if the Court assumes Plaintiff has a full and complete power of attorney effective in Maryland, because Plaintiff Collins is not an attorney, *id.* at 5, she may not litigate *pro se* the rights of her mother. *See Myers v. Loudoun Co. Public Schools*, 418 F.3d 395, 401 (4th Cir. 2005). The pleadings in this case have demonstrated that Duk Sun Lyu has not so far participated in the litigation. *See* ECF Nos. 1-1–1-8. Thus, the Court treats Collins as the only Plaintiff.

[2] Unless otherwise stated, these facts are taken from the Second Amended Complaint, ECF No. 1-8, or drawn from documents attached to and integral to the pleadings, *see e.g.*, ECF No. 1-1 at 25. Because of the liberal rules that apply to interpretation of a *pro se* party's complaint, the Court cites to documents that were attached to Plaintiff's initial Complaint and are integral to Plaintiff's allegations, but that Plaintiff failed to re-attach to her Second Amended Complaint.

1

Collins "a one-time interest payment" of $31,850.00 on December 5, 2017. *Id.* at 26. The loan agreement also obligated Hannibal to pay back the loan's principal on December 5, 2017. *Id.*

Defendant Richard Rionda Del Castro was Hannibal's President and negotiated the loan agreement on Hannibal's behalf. ECF No. 1-1 at 2; ECF No. 1-8 at 3. Specifically, Del Castro flew to Collins's home in Maryland, which Collins shared with her mother, to discuss the loan agreement's terms on December 8, 2017. ECF No. 1-1 at 2; ECF No. 1-8 at 3. Although she did not have knowledge of his reputation at the time that she made the loan, Collins alleges that Del Castro came to Maryland "to get money where people didn't know his reputation" because his contacts in Los Angeles who knew "his reputation" would be weary of lending him or his production company money. ECF No. 1-1 at 17.

Before Del Castro met Collins in Maryland, Collins explained that she was interested in making a bridge loan that would accrue interest quickly and expand funds designated for her mother's health care costs. ECF No. 1-8 ¶¶ 3, 13. Collins's mother Duk Sun Lyu has Alzheimer's Disease, among other health issues, and her health care costs are estimated to be $100,000 per year. *Id.* ¶ 15.

Del Castro told Collins that the loan would serve as "the very first seed capital to kick start the acquisition of the rights to produce" the film, Speed Kills, and that Collins' loan would be repaid before any other obligations connected to the film. *Id.* ¶ 13; *see also* ECF No. 1-1 at 25. He explained that the loan agreement was a "simple straight forward bridge loan agreement" and that she would be repaid after bank funding was acquired to finance the movie and no later than December 5, 2017. ECF No. 1-8 ¶ 11. Collins was not under the impression that repayment of her loan was contingent upon Hannibal finishing production or distributing the film. *Id.* ¶ 2. On December 7, 2016, before the parties signed the loan agreement, Collins wired Hannibal

2

$10,000 from a bank account in Maryland in both her and her mother's name. ECF No. 1-1 at 40. It is not clear if Collins had a guarantee that this $10,000 would be returned to her if the parties did not agree to the broader loan deal. *See* ECF No. 1-1; ECF No. 1-8.

Collins and Del Castro signed the loan agreement at the Gaylord Hotel in Maryland two days later on December 9, 2016. ECF No. 1-1 at 31; ECF No. 19 at 6.[3] Patricia Rionda Del Castro, Hannibal's Secretary, and Timothy Cavanaugh, an Executive Producer were also signatories. *Id.*

On her way to meet Del Castro to sign the contract, Collins spoke to her lawyer who told her that she should speak to a contracts or entertainment lawyer based in Los Angeles. ECF No. 1-1 at 13. However, Plaintiff felt obligated to sign the loan agreement because Del Castro had come to Maryland from California. *Id.* at 14. Plaintiff had also already wired Hannibal $10,000 of the loan principal, ECF No. 1-1 at 40, and it is not clear that the lawyer she spoke to had knowledge of this transfer. Collins met Del Castro at 11:00am and Del Castro had a 1:00pm flight. ECF No. 1-1 at 13. They went over only paragraphs 2 and 4 of the loan agreement together. *Id.* These paragraphs describe the interest arrangement and the payback date. *Id.* They discussed that if the loan was repaid prior to the payback date in approximately June 2017 rather than December 2017, they might mutually agree to reduce the interest rate to a flat 6%. *Id.* Plaintiff wired the remaining principal loan amount from a Bank of America located in Maryland

---

[3] Although the allegation that the contract was signed at a hotel in Maryland does not appear in Plaintiff's Second Amended Complaint, it is included in several of Plaintiff's filings with the Court, and the Court is to liberally construe Plaintiff's *pro se* pleadings. *Haines v. Kerner*, 404 U.S. 519, 521 (1972)

on December 13, 2016. ECF No. 1-1 at 41. Collins and her mother's names both appear on the account. *Id.*

Hannibal did not pay Collins the principal loan amount or interest when it came due on December 5, 2017. *See* ECF No. 1-8 ¶ 3. Del Castro treated the loan as if repayment was contingent upon the film's complete production and distribution. ECF No. 1-8 ¶ 2. He also invoked the contract's "Force Majeure" clause, which reads:

> Neither party hereto shall be deemed in default of its obligations hereunder if the business operations of HPI [i.e. Hannibal Production, Inc.] are delayed, or become impossible or impractical, by reason of any cause beyond HPI's reasonable control including, without limitation, war, strike, accident, act of God, civil unrest, epidemic, death, illness, or act or order of any governmental authority (such causes collectively referred to herein as a "Force Majeure Event"). Each party acknowledges the risk that payment of the Interest may be delayed due to a Force Majeure Event. In the event any portion or all of the above are delayed due to a Force Majeure Event, HPI shall use its best efforts to resume the payment of any sums due within a reasonable time after the Force Majeure Event has ended. Both parties shall be responsible for their own costs and expenses in connection with any such Force Majeure Event.

ECF No. 1-1 at 30–31. According to Del Castro, Hurricane Maria prevented Hannibal from abiding by the terms of the loan agreement. ECF No. 1-8 at 3. At the time the parties signed the loan agreement, Puerto Rico was a tentative production location. ECF No. 1-1 at 25. Collins alleges that all filming had been completed a few months before Hurricane Maria hit Puerto Rico and that post-production editing was always scheduled to be accomplished in California. ECF No. 1-8 ¶ 5. In any case, Collins alleges that repayment of her loan was not contingent on the film's production schedule. ECF No. 1-8 ¶ 2.

Collins alleges that Del Castro lied about the Hurricane's impact on the film because he never intended for Hannibal to repay the loan. ECF No. 1-1 ¶ 6; ECF No. 1-8 ¶ 11. According to Collins, before Del Castro flew to Maryland to convince her to sign the loan agreement, he knew that she was in the vulnerable financial position of seeking to stretch her mother's healthcare

4

funds and with this in mind he wrote "a premeditated fraudulent contract" with loopholes "designed to take advantage" of her inability to spend money recovering the investment. *Id.* In Collins's words, Del Castro "premediated tricking my mom out of her money before he even came to my home as he could see many loopholes in the contract + he knowing [sic] that I personally had no money that if we went to court . . . I would run out of money." ECF No. 1-1 at 17. The loan agreement includes an arbitration clause, which states:

> Any dispute, controversy or claim arising out of or relating to the enforcement, interpretation or alleged breach of this agreement, including without limitation tort claims and arbitrability issues, shall be submitted to and resolved by binding arbitration in Los Angeles, California before one neutral arbitrator with substantial experience in entertainment industry matters appointed by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator may be entered in and enforceable by any court having jurisdiction.

ECF No. 1-1 at 31. The loan agreement also included a choice of law clause, which says that the contract "shall be construed in accordance with the laws of the state of California, and the obligations, rights and remedies of the parties shall be determined in accordance with such laws." *Id.* at 30.

When Collins realized that Del Castro did not intend to repay her, she perfected a lien against Hannibal, Del Castro, and the film project. ECF No. 1-1 at 31; ECF No. 1-8 ¶ 2. Del Castro then reincorporated Hannibal as Defendant Speed Kills Production, Inc. and stepped down as President, allegedly to avoid repaying Collins. ECF No. 1-8 ¶ 4; ECF No. 1-1 at 19. Del Castro sold the film's distribution rights to Defendant Saban Films LLC (Saban). *Id.* Collins alleges that Del Castro led Saban to believe it purchased the film free and clear of legal disputes. ECF No. 1-1 at 19. When Saban learned of Collins position as a lienholder, it requested that she sign a non-disturbance waiver. *Id.* Collins told Del Castro that she would not sign a waiver unless she received a guarantee that her loan would be repaid. *Id.* Del Castro told Collins "you

5

notice that nobody is answering you" and said that if she did not sign the waiver, someone in Saban's legal department would sign it on her behalf. ECF No. 1-8 ¶ 6. Collins later learned that it was not true that someone in Saban's legal department planned to sign the waiver on her behalf. *Id.* ¶ 7.

On October 11, 2018, Collins commenced a civil action in the Maryland Circuit Court for Prince George's County entitled *Lyu v. Castro*, Case No. CAL18-37261. ECF No. 1-1. Collins filed several successive amended pleadings including, a second Complaint & Jury Demand on October 15, 2018, ECF No. 1-5; an Amended Complaint on October 16, 2018, ECF No. 1-7; and a Second Amended Complaint on October 17, 2018, ECF No. 1-8. On November 13, 2018, Defendants removed the action to this Court, ECF No. 1, and moved to dismiss or transfer the Second Amended Complaint, ECF No. 9.

## II. DISCUSSION

Based on the loan agreement's arbitration clause, Defendants request that the Court dismiss or transfer the Second Amended Complaint to the District Court for the Central District of California. Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, an arbitration clause contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Arbitration clauses, "as a matter of federal law, are 'separable' from the contracts in which they are embedded," meaning that although the FAA permits courts "to decide a claim of fraud in the inducement of the arbitration clause itself, it does not permit the court to consider claims of fraud in the inducement of the contract generally." *Shotto v. Laub*, 632 F. Supp. 516, 521 (D. Md. 1986) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)).

Here, although Collins has alleged fraud in the inducement of the loan contract generally, she has failed to allege that she was fraudulently induced to sign the arbitration clause. Collins does not mention the arbitration clause in her complaint or allege any facts from which the Court could conclude that Del Castro manipulated her into signing the arbitration agreement through fraud. Because Plaintiff has failed to allege fraud in the inducement of the arbitration clause agreement itself, the Court must enforce the contract's arbitration clause. That clause states:

> Any dispute, controversy or claim arising out of or relating to the enforcement, interpretation or alleged breach of this agreement, including without limitation tort claims and arbitrability issues, shall be submitted to and resolved by binding arbitration in Los Angeles, California before one neutral arbitrator with substantial experience in entertainment industry matters appointed by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator may be entered in and enforceable by any court having jurisdiction.

ECF No. 1-1 at 31.

Section 4 of the FAA provides that "the [arbitration] hearing and proceedings . . . shall be within the district in which the petition for an order directing such arbitration is filed." The FAA does not allow district courts to compel arbitration proceedings in other jurisdictions. *See Indep. Receivables Corp. v. Precision Recovery Analytics, Inc.,* 754 F. Supp. 2d 782, 786 (D. Md. 2010) (ordering that case be transferred to U.S. District Court for Western District of Texas for purposes of compelling arbitration). Because this Court lacks jurisdiction to compel arbitration proceedings in Los Angeles California, it will instead enforce the loan agreement's arbitration clause by granting Defendants' Motion to Transfer.

## III. CONCLUSION

For the foregoing reasons, Defendants Motion to Transfer is granted in part. A separate Order shall issue.

Date: <u>August 2,  2019</u>     /s/ _____
GEORGE J. HAZEL
United States District Judge